IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PHILIP A. WHARTON, JOSEPH
ROUNDTREE, JAMES MADDOX,
and LAMAR CORREA,

      Plaintiffs,

v.  :  C.A. No. 12-1240-LPS

ROBERT COUPE, CARL C.
DANBERG, and REBECCA
MCBRIDE,

      Defendants.

---

Stephen A. Hampton, GRADY & HAMPTON, L.L.C., Dover, DE

    Attorney for Plaintiffs.


Michael F. McTaggart, Scott W. Perkins, Delaware Department of Justice, Wilmington, DE

    Attorneys for Defendants.

## **MEMORANDUM OPINION**

September 30, 2015
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are (1) a Motion for Class Certification, filed by Plaintiffs Philip A. Wharton, Joseph Roundtree, James Maddox, and Lamar Correa ("Plaintiffs") (D.I. 58); (2) a Motion to Strike Certain Members of the Purported Class ("Motion to Strike"), filed by Defendants Robert Coupe,[1] Carl C. Danberg, and Rebecca McBride ("Defendants")[2] (D.I. 59); and (3) a Motion for Summary Judgment, filed by Defendants (D.I. 74). For the reasons discussed below, the Court will deny Plaintiffs' Motion for Class Certification and grant Defendants' Motion for Summary Judgment. The Court will deny as moot Defendants' Motion to Strike.

## BACKGROUND

Plaintiffs are individuals who have spent time in the custody of the Delaware Department of Correction ("DDOC"). (*See* D.I. 64 at 1) Plaintiffs filed this action on behalf of themselves and "all others similarly situated," alleging injury resulting from "the practice of the [DDOC] of over-detaining inmates and by the Defendants' deliberate indifference to the effect of the DDOC practice of over-detention on the rights of inmates." (D.I. 1 at 1; D.I. 64 at 1)

Plaintiffs seek injunctive relief and damages on behalf of themselves and their proposed class of "past, current, or future Delaware inmates" pursuant to 42 U.S.C. § 1983, Fed. R. Civ. P.

---

[1] Pursuant to an agreement by the parties, the Court ordered that "[c]urrent Commissioner of the Delaware Department of Correction ('DDOC') Robert Coupe is substituted only as a defendant for former Commissioner Carl Danberg for the purpose of Plaintiffs' claims seeking injunctive relief against the Commissioner of the DDOC. Defendant Danberg remains a defendant with respect to the legal claims raised against him by Plaintiffs." (D.I. 88 at 2)

[2] All claims against former Defendant Cathy Escherich were dismissed; she is no longer a party to this action. (*See* D.I. 88 at 1)

1

23, and the Eighth and Fourteenth Amendments.[3] (D.I. 77 at 1) Plaintiffs also allege violations of 11 *Del. C.* §§ 2104-2105. (*See* D.I. 64 at 20-21, 23; D.I. 83 at 2) Plaintiffs define the proposed class as follows:

> (a) Each person who has been, is, or in the future will be incarcerated in any Delaware prison from October 1, 2008, forward; and (b) who was not released, or, in the future, will not be released within 12 hours of the time that a court order has been forwarded to [Central Offender Records ("COR")] releasing the person, or is not released by midnight of the day his or her sentence has ended.

(D.I. 77 at 1) COR is a division of the DDOC that is "primarily responsible for calculating offenders' sentences and release dates. This unit houses and controls all active and inactive institutional and probation/parole offender records." (*See* D.I. 64 at 7) "[T]he general activities at COR include calculating offender sentences and preparing releases as ordered by the Court." (*Id.*)

Defendants are current or former officials at the DDOC or COR. Defendant Robert Coupe is the current Commissioner of the DDOC. (D.I. 88 at 2) Defendant Carl C. Danberg was Commissioner of the DDOC from the beginning of the alleged class period (October 1, 2008) through "early 2013." (*See* D.I. 64 at 2; D.I. 75 at 4) Defendant Rebecca McBride is the current Director of COR. (D.I. 75 at 4-5)

According to Plaintiffs, "[a]n inmate or detainee who has had his bail posted, had a judge order unsecured bail, or had a judge order that they be released without bail, still cannot be released until the judicial order has been processed by COR. Release orders from the Courts are

---

[3] Plaintiffs seek class certification pursuant to Rules 23(b)(2) and 23(b)(3). (D.I. 84 at 5-7) Plaintiffs previously asserted claims under the Fourth and Fifth Amendments but subsequently dropped these claims. (*See* D.I. 83 at 2; 88 at 1)

2

transmitted to COR by fax machine." Subsequently, "a COR employee will fill out a check list on a computer screen to determine whether any reason remains to continue to hold the offender in custody." (*Id.*)

> If all of the checklist information is satisfactory, the COR employee checks off the appropriate preprinted instructions to the receiving room staff to do such things as verify the identity of the inmate by photograph, return the inmate's property, and have the inmate sign any bail or bond papers that need to be signed prior to releasing the inmate. A similar checklist exists for an inmate or detainee for whom the reason for the incarceration has expired. However, that checklist also requires the COR employee to review the current active legal section to ensure the accuracy of sentence calculation and release date.

(*Id.* at 7-8)

Plaintiffs allege various deficiencies at COR, including (1) COR is only open during certain hours (limiting the responsiveness of COR to releases received after-hours), (2) COR is inadequately staffed, (3) COR employees "frequently den[y] receiving . . . release orders," (4) COR employees are frequently unresponsive to phone calls by bail bondsmen, family and friends of inmates, or even the inmates themselves, who are detained past their release dates or past the dates when their sentences expire, and (5) COR frequently delays processing release orders for more than 12 hours. (D.I. 64 at 8-11) Defendants dispute the aforementioned allegations. (*See generally* D.I. 75, 81)

## LEGAL STANDARDS

### I. Class Certification

"Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of [Federal] Rule [of Civil Procedure] 23 are met." *In re Hydrogen*

3

*Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (quoting *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982)). Pursuant to Rule 23(a), the Court may certify a class only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to satisfying the requirements of Rule 23(a), a party seeking class certification must satisfy one of Rule 23(b)'s additional requirements. *See Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004) ("[P]arties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3) . . . ."). Plaintiffs here seek certification under Rule 23(b)(2) and 23(b)(3). (D.I. 84 at 4) Certification under Rule 23(b)(2) is permissible where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Certification under Rule 23(b)(3) is permissible where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## II. <u>Summary Judgment</u>

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of

demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the

evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## DISCUSSION

### I. Plaintiffs' Motion for Class Certification

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements – numerosity, commonality, typicality, and adequate representation – effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks omitted). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* at 2551 (emphasis in original).

"The crux of this case is commonality – the rule requiring a plaintiff to show that 'there are questions of law or fact common to the class.'" *Id.* at 2550-51 (quoting Rule 23(a)(2)). Plaintiffs' claims "must depend upon a common contention" which "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity

6

will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551.

Plaintiffs have failed to prove sufficient commonality among the claims of their proposed class members. Defendants argue, and Plaintiffs do not dispute, that at least some of the alleged over-detentions were caused by ***court*** errors or delays. (*See* D.I. 75 at 7-10; D.I. 77 at 17) For example, release papers for Plaintiff Joseph Roundtree were, according to Defendants (and without dispute from Plaintiffs), processed "promptly" upon receiving them, although "Family Court in New Castle may have delayed in sending" the release papers. (*See* D.I. 75 at 7)

Because Plaintiffs appear to concede that some of the alleged over-detentions were caused by court errors (*see* D.I. 71 at 7) (arguing court errors could be minimized, but not necessarily eliminated), rather than errors that could have been controlled or prevented by personnel at the DDOC, it would be improper to certify a class of every inmate who has been or will be over-detained for more than 12 hours past a release date or past midnight of their sentence terminations. Plaintiffs are suing only DDOC officials in this case. If the Court were to certify Plaintiffs' proposed class, and if the proposed class were to prevail on the merits, it would impute liability to Defendants for actions of non-parties – actions that Defendants had no control over. Thus, there is no "common contention" for Plaintiffs' proposed class, the truth or falsity of which would "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551.

Because Plaintiffs have failed to meet the commonality requirement of Rule 23(a), the Court will deny Plaintiffs' Motion for Class Certification (D.I. 58). In light of this ruling, the Court will deny as moot Defendants' Motion to Strike Certain Members of the Purported Class

7

(D.I. 59).

## II. Defendants' Motion for Summary Judgment

### A. Sovereign Immunity

Defendants contend that the Eleventh Amendment bars Plaintiffs' claims against Defendants in their official capacities. (D.I. 75 at 14-15) The Eleventh Amendment forbids suits in federal courts against a state absent "unequivocal indication that the State intends to consent to federal jurisdiction." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985). Consistent with the Eleventh Amendment, the doctrine of sovereign immunity protects state officials from liability if the suit is such that "the state is the real, substantial party in interest." *Pennhurst State School & Hosp. v. Halder*, 465 U.S. 89, 101 (1984); *see also Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) ("[R]elief sought nominally against an [official] is in fact against the sovereign if the decree would operate against the latter."). Plaintiffs specified in their Amended Complaint that "[a]ll Defendants are sued in their individual *and official* capacities." (*See* D.I. 64 at 23) (emphasis added) To the extent Plaintiffs are suing Defendants in their official capacities, the Court determines that such claims are barred by the doctrine of sovereign immunity.

### B. Qualified Immunity

Defendants also contend that Plaintiffs are barred from recovering damages by the doctrine of qualified immunity. (*See* D.I. 75 at 2)

> Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. To be clearly established, a right must be sufficiently clear that every reasonable official would have

8

> understood that what he is doing violates that right. When properly
> applied, qualified immunity protects all but the plainly incompetent
> or those who knowingly violate the law. We do not require a case
> directly on point, but existing precedent must have placed the
> statutory or constitutional question beyond debate.

*Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (internal citations, brackets, and quotation marks omitted).

Defendants contend that there is no clearly established right to be released within a specific period of time, let alone the 12-hour period proposed by Plaintiffs. (D.I. 75 at 16) Plaintiffs respond by citing analysis from a District Court's opinion, *Banks v. York*, 515 F. Supp. 2d 89, 115 (D.D.C. 2007), for the proposition that "the law regarding over-detention and Section 1983 liability based on supervisory inaction was clearly established by early 2006" and that "there is . . . a substantial body of law recognizing that over-detention violates the Constitution." *Id.* (internal quotation marks omitted; collecting cases involving over-detention).[4]

Because the Court will resolve Defendants' summary judgment motion on other grounds, discussed *infra*, the Court need not determine whether Plaintiffs have proven that there is a clearly established right for prisoners to be released within 12 hours of court orders or by midnight on the date their sentences terminate.

C.  **Plaintiffs' Claims Under 11 *Del. C.* §§ 2104-2105**

Plaintiffs allege violations of 11 *Del. C.* §§ 2104-2105. (*See* D.I. 64 at 20-21, 23; D.I. 83 at 2) These code sections address the duties of Delaware State Courts, not DDOC officials. *See*

---

[4]*Banks* resolved a motion to dismiss, rather than a motion for summary judgment, and did not address potential violations in light of a complete factual record. Moreover, the Court in *Banks* gave weight to the fact that the District of Columbia – the Defendant in the *Banks* case – had a history of over-detention violations, including a series of "injunctions and settlement agreements." *Id.* at 115. Plaintiffs have pointed to no similar history in Delaware.

9

*generally* 11 *Del. C.* §§ 2104-2105; *see also* 11 *Del. C.* § 2101 ("Purposes of this chapter") ("It is the purpose of this chapter to reform the system of bail *in the various courts of this State* and to empower and equip *the courts* to utilize a system of personal recognizance or an unsecured personal appearance bond . . . pending a final determination *of the court* . . . .") (emphasis added). These Sections do not set out any duties of DDOC officials. Therefore, the Court will grant summary judgment in favor of Defendants as to Plaintiffs' claims under §§ 2104 or 2105, since Defendants are being sued in their capacities as DDOC officials.[5]

### D. Plaintiffs' Fourteenth Amendment Claims

Plaintiffs assert claims under both the Eighth and Fourteenth Amendments. However, Plaintiffs do not cite any case law for the proposition that they may bring claims under both Amendments challenging the same conduct. Plaintiffs' claims concern their conditions of confinement and alleged failures by Defendants to ensure timely release. As such, the claims fit squarely within the Third Circuit's over-detention and Eighth Amendment analysis. *See generally Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989). Plaintiffs' proposed class, quoted above, includes prisoners who have been or will be over-detained in prison; it is not directed at individuals who have only suffered more generalized deprivations of liberty that might be addressed under a Fourteenth Amendment analysis. In similar circumstances, the Third Circuit has applied the "more-specific-provision rule" to hold that Fourteenth Amendment claims need not be addressed separately from Eighth Amendment claims. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 261 (3d Cir. 2010) ("Because these allegations fit squarely within the Eighth

---

[5] Danberg is currently a judge on the Delaware Court of Common Pleas, a position he has held since early 2013. (*See* D.I. 75 at 4)

Amendment's prohibition on cruel and unusual punishment, we hold that the more-specific-provision rule forecloses [Plaintiff]'s substantive due process claims."). For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment with respect to Plaintiffs' Fourteenth Amendment claims.[6]

### E. Plaintiffs' Eighth Amendment Claims

Section 1983 provides a cause of action against every person who, under color of state law, "subjects, or causes to be subjected," another person to a deprivation of a federally protected right. 42 U.S.C. § 1983.

> It is well-recognized that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. Rather, state actors are liable only for their own unconstitutional conduct. With this principle in mind, we have previously identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates. First, liability may attach if they, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm. Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct. "Failure to" claims – failure to train, failure to discipline, or, as is the case here, failure to supervise – are generally considered a subcategory of policy or practice liability.

---

[6] Plaintiffs contend that "[b]y continuing to allow DDOC employees, including COR employees[,] to refuse to respond to inmate requests for paperwork concerning their over-detention, Defendants have denied, and continue to deny[,] Plaintiffs' access to the courts and to deny [sic] Plaintiffs' due process, in violation of their rights under the Fourteenth Amendment." (D.I. 64 at 25) The Court finds that, while this may appear to be a standalone claim under the Fourteenth Amendment, Plaintiffs' allegations clearly focus on prisoners who have been over-detained, regardless of *why* such prisoners were over-detained (for example, because of insufficient responsiveness to inmate requests). Again, then, by application of the more-specific-provision rule, the Court will dismiss Plaintiffs' Fourteenth Amendment claims.

11

*Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316-17 (3d Cir. 2014) *rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015) (internal citations, brackets, and quotation marks omitted). In this case, Plaintiffs allege that Defendants' conduct falls under the first of the abovementioned categories of liability (policy or practice liability). (*See generally* D.I. 64) Plaintiffs have not alleged that Defendants are liable under the second category.

Under the applicable Eighth Amendment analysis, Plaintiffs' burden is to demonstrate that "(1) a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention." *Montanez v. Thompson*, 603 F.3d 243, 252 (3d Cir. 2010), *as amended* (May 25, 2010).

With respect to the first requirement from *Montanez*, the Court cannot say at this time that no reasonable jury could find that Defendants had knowledge of the over-detention problem and the risk that unwarranted punishment was being inflicted. There are genuine disputes of material fact as to whether Defendants were aware of what might be found to be general disorganization and incompetence of DDOC personnel and whether Defendants were aware of a significant risk that unwarranted punishment might be inflicted on prisoners. Thus, even though Plaintiffs have failed to tie Defendants' awareness of these problems to any specific policies or actions of Defendants, Plaintiffs have adduced evidence from which a reasonable jury could find that Plaintiffs have met the first requirement.

Regarding the second requirement from *Montanez* – deliberate indifference – the Court

determines that no reasonable factfinder could find that Defendants were deliberately indifferent to the risk of Plaintiffs' over-detention. Plaintiffs make a series of vague allegations against Danberg[7] and McBride, arguing that each of them knew about the general problem of over-detention but did nothing about it. (*See generally* D.I. 64 at 18-20, 22-26) Even assuming that existing policies at the DDOC created an unreasonable risk of Eighth Amendment injury, there is insufficient evidence in the record from which a reasonable factfinder could conclude that Defendants were *indifferent* to that risk. To the contrary, the record shows that each of the Defendants worked to improve the DDOC and COR to address over-detention issues.

As noted in Plaintiffs' own submissions, former Commissioner Danberg was praised as being "the first member of [former Governor] Minner['s] administration to ever step up and accept responsibility for a problem [related to erroneous prisoner releases], acknowledging it exists and telling us what he is trying to do to fix it." (D.I. 61-3 at PA184) The undisputed record shows that Danberg created COR with an eye toward improving prisoner release processes:

> [Danberg] coordinated efforts with the bureau chief and Cathy Escherich and the union relating to the business change, because it was a huge business change for the department in the centralization of records. We met with legislators in discussion with the centralization of records, chief justices from the different courts. So he played a pretty active role in forming discussions and communications and coordinating those through the union, which central offender records staff are a part of.
>
> . . .

---

[7]For purposes of Plaintiffs' request for injunctive relief, the Court will interpret the general allegations against Danberg discussed hereinafter as being directed to Coupe, who is the current Commissioner of the DDOC. (*See* D.I. 88 at 2)

> The centralization of records was initiated in order to centralize our business practices so that we were uniform and consistent in getting the calculations done, releases done, the legal processes done, and that the actual process procedure would be handled in a uniform manner.

(*See* McBride Deposition, D.I. 60-1 at 246-47) These are not the actions of someone who is "deliberately indifferent" to a problem. On the record before the Court, one can only conclude that Danberg worked to address over-detention issues, and that he was not deliberately indifferent to them.

Likewise, Plaintiffs have produced no evidence indicating that McBride is or was deliberately indifferent to the over-detention problem. As she stated at her deposition – and without dispute from Plaintiffs – COR processes between 16,000 and 18,000 releases a year. (D.I. 60-1 at 249) "The administration of a system of punishment entails an unavoidable risk of error. In the case of punishment through imprisonment, those errors may result in harms to inmates. Elimination of the risk of error in many instances would be either literally impossible or unfeasible because prohibitively costly." *Sample*, 885 F.2d 1099, 1108 (3d Cir. 1989). Given the number of releases handled by COR each year, it is unsurprising (though of course unfortunate) that errors occur and that prisoners are sometimes over-detained. Evidence that some incidents of over-detention occurred is not sufficient, by itself, to show that McBride was deliberately indifferent to such incidents. To the contrary, McBride demonstrated throughout her deposition that she was intimately familiar with COR's procedures, including training procedures intended to improve handling of prisoner releases, and she actively worked to improve processes at COR to prevent and address problems of over-detention. (*See, e.g.*, D.I. 60-1 at 239, 248-52)

Regarding current Commissioner Coupe, Plaintiffs have adduced no evidence whatsoever

14

suggesting that he is or was deliberately indifferent to the over-detention problem. In fact, the only reference to Coupe in Plaintiffs' summary judgment brief shows that Coupe was ***not*** deliberately indifferent to the over-detention problem. (*See* D.I. 77 at 13) ("In 2013, Bureau Chief Kim Wheatley was pushed by Commissioner Coupe to have COR form a 'special unit' to speed up the daily bail releases.") As with the other Defendants, the record supports only a finding that Coupe was trying to improve the DDOC, and COR specifically. Thus, the Court will grant summary judgment in favor of Defendants in light of Plaintiffs' failure to produce evidence of deliberate indifference.

Regarding the third requirement from *Montanez*, and as an independent basis for granting summary judgment in Defendants' favor, the Court finds that Plaintiffs have pointed to no causal connection between any actions or policies attributable to Defendants and the harm suffered by Plaintiffs. Plaintiffs point to COR's hours of operation (*see* D.I. 77 at 2), general unresponsiveness to requests on behalf of inmates (*see id.* at 4), and alleged understaffing (*see id.* at 5), but Plaintiffs make no attempt to connect any of these alleged deficiencies to Plaintiffs' specific harm or even Defendants' conduct or policies. As such, the Court finds that no reasonable jury could find a causal connection between Defendants' actions or policies and Plaintiffs' harm.

Accordingly, the Court will grant Defendants' Motion for Summary Judgment with respect to Plaintiffs' Eighth Amendment claims.

## CONCLUSION

For the reasons discussed above, the Court will deny Plaintiffs' Motion for Class Certification (D.I. 58), deny as moot Defendants' Motion to Strike (D.I. 59), and grant Defendants' Motion for Summary Judgment (D.I. 74). An appropriate Order follows.